UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT EMPLOYEES INSURANCE CO., et al.,

                                     Plaintiffs,             Docket No.:  CV 14-3775
                                                                     (KAM)(SMG)

    -against-

ANDREY ANIKEYEV, et al.,

                                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANDREY ANIKEYEV'S MOTION TO VACATE THE CERTIFICATE OF DEFAULT

                                         Respectfully submitted,

                                         RIVKIN RADLER LLP
                                         926 RXR Plaza
                                       Uniondale, New York 11556
                                       (516) 357-3000

                                         *Counsel for Plaintiffs, Government Employees*
                                         *Insurance Co., GEICO Indemnity Co., GEICO*
                                         *General Insurance Company and GEICO Casualty*
                                         *Co.*

Of Counsel:

Michael A. Sirignano (MS 5263)
Barry I. Levy (BL 2190)
Ryan Goldberg (RG 7570)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................3

    I.   Relevant Procedural History ......................................................................3

    II.  Relevant Facts Regarding Anikeyev's Contentions on This Motion.................3

ARGUMENT.........................................................................................................6

    I.   The Standards on This Motion....................................................................6

    II.  Anikeyev's Default Was Willful and/or Egregious ......................................7

    III. Anikeyev Has Failed to Present any Meritorious Defense ..........................11

    IV. GEICO Will Be Prejudiced if Anikeyev's Default is Vacated ....................16

CONCLUSION ....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Action SA v. Marc Rich & Co., Inc.</u>
    951 F.2d 504 (2d Cir. 1991) ................................................................................ 7

<u>Allstate Ins. Co. v. Bogoraz,</u>
    2012 US Dist. LEXIS 68110 (E.D.N.Y.2012) ............................................... 13, 18

<u>Badian v. Brandaid Communications Corp.</u>,
    2004 WL 1933573 (S.D.N.Y. 2004) ....................................................... 7, 16, 17

<u>Davis v. Musler,</u>
    713 F.2d 907 (2d Cir. 1983) ............................................................................. 16

<u>DirecTV, Inc. v. Rosenberg,</u>
    2004 WL 345523 (SDNY 2004) ....................................................................... 14

<u>Enron Oil Corp. v. Diakuhara,</u>
    10 F.3d 90 (2d Cir. 1993) ............................................................................ 6, 11

<u>FedEX Techconnect, Inc. v. OTI, Inc.</u>,
    2013 WL 5405699 (S.D.N.Y. 2013) ................................................................. 17

<u>Finkel v. Hall-Mark Elec. Supplies Corp.</u>,
    2011 WL 2847407 (E.D.N.Y. 2011) ................................................................. 12

<u>Gesualdi v. Tapia Trucking, Inc.</u>,
    2009 U.S. Dist. LEXIS 82958 (E.D.N.Y. 2009) ......................................... 7, 11, 14

<u>Gesualdi v. Tapia Trucking, Inc.</u>,
    <u>supra</u>, 2009 US Dist Lexis 82958 (E.D.N.Y. 2009) .......................................... 11

<u>Gladys Music v. Ed Smith Prod., Ltd.</u>,
    1994 WL 705265 (N.D.N.Y. 1994) ................................................................... 19

<u>Goodrich v. WFS Financial, Inc.</u>,
    2008 WL 1805819 (E.D.N.Y 2008) .................................................................... 7

<u>GEICO v. Razzakova, et al.</u>,
    11-CV-4237 (FMB)(SMG) ............................................................................... 15

<u>GEICO v. Right Solution Med. Supply, Inc.</u>,
    2012 U.S. Dist. LEXIS 179621 (E.D.N.Y. 2012)(Orenstein, J.)...................6, 11, 16, 19

Gucci Am., Inc. v. Gold Ctr. Jewelry,
    158 F.3d 631 (2d Cir. 1998) ........................................................................7, 11

Hernandez v. La Cazuela de Mari Restaurant, Inc.,
    538 F.Supp. 2d 528 (E.D.N.Y. 2007) ..........................................................7, 11

ILGWU Nat. Retirement Fund v. Empire State Mills Corp.,
    696 F.Supp. 885 (S.D.N.Y. 1988) ...................................................................10

Indymac Bank v. Nat'l Settlement Agency, Inc.,
    2007 WL 4468652 (S.D.N.Y. 2007) ..................................................................7

King v. Galluzzo Equipment & Excavating Inc.,
    223 F.R.D.94 (E.D.N.Y. 2004) ........................................................................10

Kulwa v. Obiakor OB/GYN, PC,
    2013 US Dist. LEXIS 17785 (E.D.N.Y. 2013) ................................................18

Labarbera v. Interstate Payroll Co., Inc.,
    2009 WL 1564381 (E.D.N.Y. 2009) ..................................................................7

Liberty Mutual Ins. Co., et al, v. Matskina, L.Ac., et al,
    Docket No. 14-CV-1330 (BMC) .......................................................................10

Municipal Credit Union v. Queens Auto Mall, Inc.,
    2014 WL 6870960 (E.D.N.Y. 2014) ................................................................13

Neff v. U.S.,
    971 F.Supp. 771 (E.D.N.Y. 1997) ...................................................................10

Original Appalachian Artworks v. Yuil International,
    105 F.R.D. 113 (S.D.N.Y.1985) .......................................................................10

SEC v. Breed,
    2004 U.S. Dist. Lexis 16106 (S.D.N.Y. 2004) ...............................................11

SEC v. Breed,
    U.S. Dist. Lexis 16106 (S.D.N.Y. 2004) .........................................................13

SEC v. McNulty,
    137 F.3d 732 (2d. Cir. 1998) ........................................................7, 11, 12, 19

State Farm Mut. Auto. Ins. Co., v. Barry Cohan, D.D.S. et al.,
    409 Fed. Appx. 453 (2d Cir. 2011) ...............................................................6, 19

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. 2010), aff'd Barry Cohan, D.D.S.,
    supra. See also Badian v. Elliot, 165 Fed.Appx. 886, 2006 WL 166317 (2d
    Cir. 2006) .......................................................................................................... 11

Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf,
    2006 U.S. Dist. Lexis 72711 (S.D.N.Y. 2006) ............................................... 12, 13

Travelers Indem. Co. v. Kabir,
    368 Fed. App'x 209 (2d Cir.2010) ..................................................................... 15

U.S. v. Zemlyansky,
    12-CR-00171 (SDNY 2012) ...................................................................... 3, 4, 5, 15

United Overseas Bank v. Marchand,
    1996 WL 695902 (S.D.N.Y. 1996) ..................................................................... 16

United States v. Medley,
    13 Fed. App'x 58 (2d Cir.2001) ......................................................................... 15

United States v. Riser,
    No. 10–CV–4550, 2011 WL 1004566 (E.D.N.Y. March 16, 2011) ..................... 15

Washington v. James,
    996 F.2d 1442 (2d Cir.1993) ............................................................................. 10

Willis v. Landamerica Onestop, Inc.,
    2009 WL 2474624 (S.D.N.Y. 2009) .................................................................. 19

World Magic International AVV v. Eddy International, LTD,
    2010 WL 4457184 (S.D.N.Y. 2010) ................................................................ 7, 16

**Other Authorities**

F.R.C.P. 55(c) ........................................................................................................ 6

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "Plaintiffs" or "GEICO") respectfully submit this memorandum of law in opposition to the motion by defaulting Defendant Andrey Anikeyev ("Anikeyev" and/or the "Defaulting Defendant") to vacate his default in this action. Defendant's motion is devoid of all merit.

First, Anikeyev's default was willful or, at the least, egregious. Even giving Anikeyev's moving papers the most liberal reading, Anikeyev admits he was served with the Complaint, but then put his head in the sand for over one year, only deciding to appear when faced with a multimillion dollar judgment. Cutting through Anikeyev's rambling allegations and arguments, there is absolutely no dispute that:

- Anikeyev was served with the Complaint while in federal prison, and understood that he was being sued for, among other things, illegally owning "Lenny's chiropractor business";

- Anikeyev was, and is, an experienced litigant, who was indicted and pled guilty to conspiracy to commit health care and mail fraud;

- Anikeyev's ONLY alleged effort to address the Complaint was to ask his wife to forward it to counsel but his allegation is totally uncorroborated, as even his wife failed to submit an affidavit; and

- For over one year, Anikeyev never made any effort to follow up with counsel; never made any effort to talk further with his wife about the Complaint; and never bothered to talk with his "friend" Lenny about the Complaint, even though he had 300 minutes every month for at least a year to make phone calls.

It is not reasonable to credit Anikeyev's unsupported, self-serving assertion that he asked his wife to forward the Complaint to counsel when Anikeyev has a documented history of perpetrating fraud; there is no evidence that Anikeyev or his wife attempted to pay or formally retain counsel; and Anikeyev's counsel affirms he never received the Complaint. Anikeyev and his wife apparently did *nothing else* for over one year even though he knew he was sued in

federal court and knew that this action was pending month after month.  Such inaction in the face of a federal court complaint is egregious.

Second, Anikeyev presents no substantive meritorious defense.  Anikeyev asserts that he did not plead guilty to the allegations in the within civil Complaint.  While this is true, the Government indictment included assertions that Anikeyev illegally owned and controlled chiropractic professional corporations (in addition to acupuncture corporations) and his guilty plea as to other crimes does not mean he was a prevailing party as to the chiropractic professional corporations.  Beyond that, Anikeyev offers only general denials and semantics (without any corroborating affidavits or evidence) to try and distance himself from the obvious fraudulent billing. Yet, even Anikeyev's blithe assertions make clear that Anikeyev was directly associated with the billing company he claims was owned by his brother-in-law, that he was present at the billing location, and that a PO Box controlled by him was used for "Lenny's billing."  Anikeyev's self-serving denials plainly do not include any exculpatory material or evidence supporting a meritorious defense.

Lastly, GEICO will be seriously prejudiced if Anikeyev's motion is granted, inasmuch as his conscious disregard for this action has thwarted meaningful discovery and allowed evidence to become stale. Anikeyev's willful and/or egregious conduct in the face of GEICO's Complaint is particularly prejudicial here since (i) this is a fraud case where speed is critical to obtaining unaltered evidence in the defendants' possession and (ii) GEICO settled its claims against co-defendant Leonid Simakovsky in June 2015 based on the knowledge that Anikeyev had been in default for almost one year, unfairly leaving GEICO to litigate this action in piecemeal fashion.

Plainly, Anikeyev's motion to vacate is nothing more than a tactical ploy to thwart or delay GEICO's right to execute on its expected judgment.  The Court should not countenance such bad faith litigation tactics.

2

<u>**STATEMENT OF RELEVANT FACTS**</u>

I. <u>**Relevant Procedural History**</u>

The Clerk of Court entered Anikeyev's default approximately one year ago, on October 21, 2014. <u>See</u> Docket No. 24. Though Anikeyev manifestly was aware and admits he was served with the Complaint in this action, he took no steps whatsoever to seek a vacatur until after GEICO made its currently-pending motion for the entry of a default judgment (<u>see</u> Docket Nos. 25-29, 40), and – indeed – until after the Court issued its Report and Recommendation, which recommended that GEICO's motion for default judgment be granted with respect to Andrey Anikeyev (and Defendant Alexander Sandler), and that judgment be entered against these defendants, jointly and severally, in the amount of $4,189,026.93. <u>See</u> Docket No. 42.

II. <u>**Relevant Facts Regarding Anikeyev's Contentions on This Motion**</u>

Anikeyev's motion spends almost ten pages -- not on a reasonable excuse or meritorious defense -- but on semantic arguments about Anikeyev's guilty plea for conspiracy to commit health care fraud and mail fraud in relation to his criminal indictment and subsequent criminal case. <u>See</u> <u>U.S. v. Zemlyansky</u>, 12-CR-00171 (S.D.N.Y. 2012) (the "<u>Zemlyansky</u> Action").

While Anikeyev argues that GEICO has misrepresented his guilty plea, what is lost, is that he did in fact plead guilty to one count of conspiracy to commit health care and mail fraud, and admitted during his allocution that from 2008 to 2012 he "agreed with others to commit health care and mail fraud" and "submitted bills through mail…for acupuncture services I knew were false…these bills requested payments for health care services for time periods in excess of the actual time period the patient spent." <u>Id</u>. GEICO's allegations in the Complaint never once assert that he pled guilty or agreed to pay restitution (in excess of $4,000,000.00) due to the specific allegations in GEICO's Complaint. Rather, the Complaint acknowledges that the guilty plea and restitution was based on his acknowledgement of illegally owning and controlling

3

acupuncture corporations and the restitution was being paid from the corporate accounts of five acupuncture corporations he illegally owned and controlled. See Docket No. 1, Exhibit "5."

GEICO's Complaint, however, does allege that during the Zemlyansky Action, the United States Attorney identified the chiropractic professional corporations at issue here (Pugsley Chiropractic PLLC and Canon Chiropractic, PC) as being fraudulently incorporated professional corporations set up "for the sole purpose of defrauding insurance companies in the State of New York." According to the United States Attorney, both of these professional corporations were associated with Anikeyev (and Alexander Sandler) and used in furtherance of the fraudulent scheme to defraud insurance companies. See Docket No.1, ¶42.

It is clear that Anikeyev pled guilty, served time and was ordered to pay restitution based on his admission of committing health care and mail fraud. While Anikeyev pled guilty in connection with the acupuncture billing, that does not mean he was a prevailing party as to the other charges and allegations against him, including the allegations regarding his illegal ownership and control over the chiropractic PCs herein.[1]

In his moving papers, Anikeyev offers only general denials that he was involved in the chiropractic PCs and their billing. In contrast, GEICO's Complaint describes in detail the wrongdoing committed by Anikeyev and the other defendants in this action regarding Pugsley Chiropractic PLLC and Canon Chiropractic, PC ("the PC Defendants"), which were organized not as legitimate chiropractic practices, but as "transient" providers of chiropractic services that had no true professional owner, but which were used to bill for purported chiropractic services in exchange for payments of kickbacks to the owners of numerous no-fault "medical mills."

---

[1] In fact, Anikeyev could have sought an award of attorney's fees and other litigation expenses if the criminal court found that he was a prevailing party on the dismissed claims under the "Hyde Amendment." Anikeyev never sought any such recovery; never obtained any ruling that he was a prevailing party as to the dismissed claims, and certainly never obtained any finding by the criminal court that the Government's additional claims against Anikeyev were without basis.

4

Docket No., ¶33-37. GEICO's Complaint shows, among other things, that (i) Anikeyev has a documented criminal history of engaging in a virtually identical fraudulent scheme with the Sylvan billing company involving acupuncture PCs not truly owned by professionals; (iii) Simakovsky was only a sham owner of the PC Defendants (based on, among other things, his failure to provide chiropractic treatment to any of the patients of the PC Defendants, his failure to train or supervise the chiropractors working under the names of the PC Defendants, and his failure to incur any costs or "start-up" monies to create the "practices" operating under the names of the PC Defendants); (iv) the PC Defendants' used a PO Box for billing that was associated with, among others, Anikeyev and a postage meter for mailing bills associated with the billing company that Anikeyev admitted to working for; (v) Anikeyev has a known association with the billing company, which regularly funnelled money from that company to, among others, a series of Florida companies with ties to Aniekeyev and his relatives; (vi) witness and other evidence establishes that the billing company associated with Anikeyev controlled the billing and provision of a fraudulent treatment protocol, including evidence that the treating chiropractors' paychecks came from the billing company, which was the main contact for the professionals corporations, not the alleged owner, Simakovsky. See Docket No. 1, ¶¶38-71.

In contrast to his allegation herein, Anikeyev previously admitted to controlling the billing company in an Affidavit submitted in the Zemlyansky Action. See Docket No. 1, ¶65, Exhibit "6." Monies flowed from the PC Defendants to this billing company, and indeed, the initial chiropractic examination reports contained identical typographical errors strikingly similar to typographical errors contained in initial acupuncture reports from the acupuncture PCs that Anikeyev admitted to illegally owning and controlling. Id. ¶65 and ¶87, 98-99.

5

Beyond Anikeyev's general denials, there is not one iota of hard evidence presented to suggest that any of GEICO's allegations are false or that Anikeyev was an unwilling participant in the scheme alleged by GEICO.

As to Anikeyev's efforts to show good faith, here he has been forced to admit that: (i) he was served with the Complaint while incarcerated in federal prison; (ii) he allegedly asked his wife, Valentina Anikeyeva, to forward the Complaint to counsel; and (iii) over the past year, he did not follow up, even once, with his wife, family, counsel or anyone else to determine the status of the litigation, or even ask if his wife ever forwarded the Complaint to counsel. Rather than provide an affidavit (or any other evidence) from his wife that she actually sent the Complaint to counsel, all that is left in this matter is a Defendant hiding behind being incarcerated as an excuse for not fulfilling his obligations in this litigation and to this Court.

## ARGUMENT

### I.    The Standards on This Motion

Rule 55(c) of the Federal Rules of Civil Procedure authorizes a court to "set aside an entry of default for good cause… ." In the context of a motion to set aside a default, the Second Circuit has stated that – while the rule does not define "good cause" – the Courts principally must assess: (i) whether the default was willful; (ii) whether the moving party has presented a meritorious defense; and (iii) whether setting aside the default would prejudice the party for whom default was awarded. State Farm Mut. Auto. Ins. Co., v. Barry Cohan, D.D.S. et al., 409 Fed. Appx. 453, 455 (2d Cir. 2011). Ultimately, however, the "determination of good cause is left to the sound discretion of a district court[,] because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties … ." GEICO, et al., v. Right Solution Med. Supply, Inc., 2012 U.S. Dist. LEXIS 179621 at * 8 (E.D.N.Y. 2012). See also Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993);

6

SEC v. McNulty, 137 F.3d 732, 738 (2d. Cir. 1998); Richardson, supra; Gesualdi v. Tapia Trucking, Inc., 2009 U.S. Dist. LEXIS 82958 (E.D.N.Y. 2009).

**II.   Anikeyev's Default Was Willful and/or Egregious**

In determining whether a party willfully defaulted, a court will consider whether the defendant's conduct "is deliberate or egregious or is carried out in bad faith." See e.g. Labarbera v. Interstate Payroll Co., Inc., 2009 WL 1564381, at *2 (E.D.N.Y. 2009)("[the] defendants' willful choice to ignore this litigation in the hopes that it would be resolved out of court is not good cause."); Action SA v. Marc Rich & Co., Inc. 951 F.2d 504 (2d Cir. 1991)(denying motion to vacate default where Defendant deliberately chose not to appear in the action); See also World Magic International AVV v. Eddy International, LTD, 2010 WL 4457184, *2-3 (S.D.N.Y. 2010)(finding willfulness where defendant was aware of the suit and provided no excuse for non-appearance, defendants' willful deceit undermines the Court's confidence that defendants will cooperate in discovery); Goodrich v. WFS Financial, Inc., 2008 WL 1805819, at *2 (E.D.N.Y 2008); Hernandez v. La Cazuela de Mari Restaurant, Inc., 538 F.Supp. 2d 528, 532 (E.D.N.Y. 2007); Indymac Bank v. Nat'l Settlement Agency, Inc., 2007 WL 4468652, at *1 (S.D.N.Y. 2007); Badian v. Brandaid Communications Corp., 2004 WL 1933573 at *4 (S.D.N.Y. 2004).

Here, the facts support the conclusion that Anikeyev willfully defaulted, or at minimum, acted egregiously for at least one year after being served with the Complaint. This conclusion is underscored by: (i) the implausible excuses in the Anikeyev Affidavit ("Anikeyev Aff."); and (ii) the lack of evidence presented to support his bald conclusions. See McNulty, 137 F.3d at 738 (noting such conduct must be "egregious and . . . not satisfactorily explained."); Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998).

Anikeyev admits to being served with the Complaint in federal prison and alleges he asked his wife to forward the Complaint to counsel. But there is no evidence besides Anikeyev's

unsupported, self-serving statement. If the Court were to credit Anikeyev's statement, it would have to believe that: (i) an admitted fraudster is telling the truth even though his wife failed to submit any affidavit corroborating the story; (ii) Anikeyev's wife forgot to send the Complaint to counsel or that the U.S. Postal service mishandled the Complaint since it never was received by Anikeyev's counsel, as affirmed by Attorney Zuppa after a search of his office; (iii) Anikeyev was so busy talking with his family for 300 minutes per month that he did not have time to make any other phone calls; and (iv) Anikeyev and his wife thought an attorney would appear and defend Anikeyev in federal court without talking with them regarding the allegations in the Complaint or receiving any payment for his services. In short, the Court would have to accept one ridiculous assumption after another in Anikeyev's statement.

Beyond suspending all belief regarding the purported retention of Attorney Zuppa, the Court also would have to accept the fact that Anikeyev *did nothing else* to address the Complaint for one year. GEICO submits that it is egregious for Anikeyev to not spend 1 or 2 minutes of the 3,600 minutes Anikeyev was allocated over the course of the year to call his counsel or talk further with his wife about the Complaint when (i) he knew he was being sued by GEICO in federal court and (ii) he apparently never heard anything from his attorney about this case for month after month. Anikeyev also offers nothing further about following up with his wife to be sure that the Complaint was being handled, that counsel was formally retained and paid, or that counsel was advised of the facts and given information to assist with the defense of the action, even though he admittedly spent many, many minutes communicating with family every month.

Tellingly, nowhere does Anikeyev state that, after being served with the Complaint, he ever asked his wife a single follow-up question regarding this action, whether she sent the Complaint to counsel, whether any fee had to be paid to legal counsel, or whether a response was ever provided by legal counsel. See Anikeyev Aff., ¶¶ 4-13. No person could, in good faith,

8

believe that legal counsel would receive a federal court fraud complaint from someone's wife and formally appear and defend that person without talking to him about the case or being paid for the legal work.

Cutting through all of Anikeyev's unsupported, self-serving assertions, what is left is a man who knowingly was served with a Complaint and willfully ignored his obligations for over one year until he faced a multi-million dollar judgment. That is not an excusable default.

Critically, Anikeyev has not offered an affidavit (or any other evidence) from his wife. There is no affidavit from his wife stating that she: (i) confirms the alleged conversation with Anikeyev regarding his instructions to mail the Complaint to counsel; (ii) actually mailed (or sent in any other manner) the Complaint to counsel; and (iii) made arrangements to meet with counsel, let alone pay counsel for his expected work. While Mr. Zuppa submitted an affidavit (alleging some hodgepodge mailing procedures for his office) stating he is not in possession of the Complaint, Mr. Zuppa offers no statements that Anikeyev's wife reached out to him to advise the Complaint was being sent, to discuss the matter, or to arrange payment of his counsel fees.

The only facts supported here are that Anikeyev received the Complaint, understood the graveman of the allegations, and that Attorney Zuppa never received the Complaint. That is not sufficient evidence to excuse the default herein.

Anikeyev, with deference given to his being incarcerated during the relevant default period, cannot claim to be naïve when it comes to the law and being a named defendant in a federal civil RICO case. As acknowledged by Anikeyev and his counsel, he is a named defendant (or has been) in various other civil and criminal matters and it would be hard pressed to argue that one conversation asking his wife to forward a copy of the Complaint is sufficient to suggest an individual who wanted to actively participate in the within litigation. See Docket No. 1, ¶¶38-53, Anikeyev Aff., Zuppa Aff. In fact, Anikeyev admits in his affidavit that he was

9

served with complaints on two occasions. As Attorney Zuppa and undersigned counsel both know (since we are both counsel of record in the second case), Anikeyev has defaulted (and had judgment entered against him in excess of $4,500,000.00) in that second case as well – demonstrating *a pattern* of non-compliance and willful default. See Liberty Mutual Ins. Co., et al, v. Matskina, L.Ac., et al, Docket No. 14-CV-1330 (BMC)(Docket Nos. 79, 103, 124) annexed to the Declaration of Ryan Goldberg as Exhibit "1".[2]   How Anikeyev could be sued in two federal court cases and not make any effort at all over the course of a year to confer with counsel or follow up about their status *in any way* in plainly egregious.

Additionally, Anikeyev's wife is the listed owner of at least 15 acupuncture corporations that have filed thousands of lawsuits in the courts of New York (as well as being a named defendant in at least one state court litigation).   It is not credible to believe any argument of ignorance or that either of them acted any way but willfully in ignoring the Complaint in this matter and not discussing it even once in the year after being served.

In any case, the Second Circuit has held that ignorance does not constitute "good cause" to excuse procedural default. See Washington v. James, 996 F.2d 1442, 1447 (2d Cir.1993)("Ignorance or inadvertence will not constitute cause."); Neff v. U.S., 971 F.Supp. 771, 774 (E.D.N.Y. 1997). Additionally, it is well settled that lack of legal sophistication does not excuse a default. See e.g.   King v. Galluzzo Equipment & Excavating Inc., 223 F.R.D.94 (E.D.N.Y. 2004) ("Lack of sophistication...is no excuse for a defendants' default."); ); ILGWU Nat. Retirement Fund v. Empire State Mills Corp., 696 F.Supp. 885 (S.D.N.Y. 1988); Original

---

[2] In fact, Anikeyev uses an identical "excuse" for his default in the Liberty Mutual case, admitting he was served with the Complaint, but that his wife failed to send a copy of the Complaint to attorney Zuppa. See Liberty Mutual Ins. Co., et al, v. Matskina, L.Ac., et al, Docket No. 14-CV-1330 (BMC)(Docket No. 121). This repeated pattern of default can be called nothing short of willful.   A copy of this letter is annexed to the Declaration of Ryan Goldberg as Exhibit "2".

Appalachian Artworks v. Yuil International, 105 F.R.D. 113, 116 (S.D.N.Y.1985).  However, that is not even what occurred in this instance.

In determining whether a party willfully defaulted, a court will consider whether the defendant's conduct "is deliberate or egregious or is carried out in bad faith." See Hernandez v. La Cazuela de Mari Restaurant, Inc., 538 F.Supp. 2d 528, 532 (E.D.N.Y. 2007); Gesualdi, supra, at *4. Willfulness, however, does not require a finding of bad faith and may include conduct that is not satisfactorily explained.  See Gucci Am. v. Gold Ctr. Jewelry, 158 F.3d 631, 634 (2d Cir. 1998); McNulty, 137 F.3d at 738.

In short, Anikeyev's conduct has not been satisfactorily explained.  To the contrary, all of the evidence in this case demonstrates that Anikeyev acted in bad faith, willfully, or at minimum, with egregious disregard for the Complaint, this proceeding, and this Court.

### III.   Anikeyev Has Failed to Present any Meritorious Defense

Even if Anikeyev had adduced some genuine explanation for his willful and/or egregious default, "a defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default." Right Solution Med. Supply, Inc., supra at * 13.  In this respect, defendants seeking to vacate a default "need not conclusively establish any facts, but they do have an obligation to come forward with evidence of facts that, if proven at trial, would constitute a complete defense." Id. (Internal quotations and citation omitted).

As this Court has observed, "[c]onclusory denials of a plaintiff's factual allegations do not suffice to establish a meritorious defense." Id.  In particular, "simply saying 'I didn't do it,' is not a meritorious defense." State Farm Mut. Auto. Ins. Co. v. Cohan, 2010 U.S. Dist. LEXIS 21376 at * 9 (E.D.N.Y. 2010), aff'd Barry Cohan, D.D.S., supra. See also Badian v. Elliot, 165 Fed.Appx. 886, 2006 WL 166317 (2d Cir. 2006); Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 98

(2d Cir. 1993); <u>SEC v. Breed</u>, 2004 U.S. Dist. Lexis 16106, *37 (S.D.N.Y. 2004); <u>Gesualdi v.</u>
<u>Tapia Trucking, Inc.</u>, <u>supra</u>, 2009 US Dist Lexis 82958 (E.D.N.Y. 2009).

A defendant may not simply allege there is a defense, but rather must go further and provide evidence and allege specific facts that, if proven at trial, would constitute a complete defense to the claims asserted in the Complaint. See <u>McNulty</u>, 137 F.3d at 740; <u>Finkel v. Hall-</u>
<u>Mark Elec. Supplies Corp.</u>, 2011 WL 2847407 (E.D.N.Y. 2011); <u>Todtman, Nachamie, Spizz &</u>
<u>Johns, P.C. v. Ashraf</u>, 2006 U.S. Dist. Lexis 72711, at *3-4 (S.D.N.Y. 2006).

In the present case, Anikeyev's putative "meritorious defense" is a textbook example of a conclusory, "I didn't do it" denial. Distilled to its essence, Anikeyev's defense, unsupported by any evidence, amounts to a contention that the allegations in the Complaint are false, he did not illegally own and control the PC Defendants, therefore, was not responsible for the fraudulent billing submitted through the PC Defendants. See Anikeyev Aff., <u>passim</u>. Of course, to the extent that Anikeyev has submitted any evidence in support of this conclusory denial, the evidence suggests that Anikeyev was actively involved in the control and operations of the PC Defendants during the pertinent period. Additionally, while much is made of the semantics regarding GEICO's allegations with respect to Anikeyev's guilty plea, it is undisputed that he pled guilty to committing health care fraud and mail fraud for his role in a fraudulent scheme akin to the allegations in the within Complaint.

Tellingly, Anikeyev has not even offered up a straightforward conclusory denial as his meritorious defense, but rather a denial that is contravened in large measure by the very evidence upon which it is predicated. Anikeyev, in fact, associates himself with "Lenny", admits that he was the reason for the chiropractic PCs using a PO Box for billing and receipt of insurance checks, admits to sharing space with the billing company (though he previously admitted to

owning it), and admits that he earned income from the billing company.  Anikeyev then merely denies any further wrongdoing, without presenting any exculpatory facts or evidence.

Where is an affidavit from Anikeyev's wife?  Where is an affidavit from his brother-in-law, who he claims solely owns the billing company?  Where are the affidavits from billing company employees or from anyone else who could support his claim that he had a limited role in the billing company, and no role with the chiropractic billing?  Where are the business and financial records or other evidence demonstrating his employment income?  Where are the emails of his communications with Lenny and others showing his harmless assistance to Lenny after Lenny complained about another billing company stealing checks sent by insurance companies?  Where are the financial and other records regarding his limited employment with the billing company and his income being related only to "such things as client referrals and litigation support" for Sylvan's clients.  The lack of any evidence in support of Anikeyev's self-serving "I was not involved" defense speaks volumes. See e.g. Municipal Credit Union v. Queens Auto Mall, Inc., 2014 WL 6870960 at *1-2 (E.D.N.Y. 2014)(finding defendant did not prove a meritorious defense as they provided no explanation of a defense, but rather technicalities).

Anikeyev's denials, at bottom, amount to nothing more than him saying "I did not handle any chiropractic billing for Lenny Simakovsky or any professional corporation owned by Simakovsky"; "I was in no way involved in the operation of Pugsley or Canon or any chiropractic company;" and "I had no ownership interest in any chiropractic company." See Anikeyev Aff., ¶28.  This is a textbook example of a general denial that is insufficient to establish a meritorious defense, in accordance with this Court's precedent. See Allstate Ins. Co. v. Bogoraz, 2012 US Dist. LEXIS 68110 *14-15 (E.D.N.Y.2012) (Court finds no meritorious defense where the defendant issued "a blanket denial that he knew of any illegal activity" and

13

also "consistently maintained that at all pertinent times his impression was that he was handling legitimate No-Fault Claims."); SEC v. Breed, U.S. Dist. Lexis 16106 at *37 (S.D.N.Y. 2004) ("With regard to defendants' affidavits, I am reminded of the common wisdom expressed by Judge Casey in [DirecTV, Inc. v. Rosenberg, 2004 WL 345523 (S.D.N.Y. 2004)], which is that "I didn't do it" is not a meritorious defense....defendants are obligated to assert facts rather than conclusory statements"); Gesualdi, supra, 2009 U.S. Dist. LEXIS 82958 at *7.

What cannot be argued, as alleged in the Complaint is that:

(i)     unlicensed non-chiropractors purchased the use of a chiropractor's license for a nominal sum or some ongoing payment, then used the chiropractor's license to fraudulently incorporate two professional corporations, Canon Chiropractic Care, P.C. ("Canon") and Pugsley Chiropractic, P.L.L.C. ("Pugsley")(collectively the "PC Defendants");

(ii)    though the professional corporations nominally were owned on paper by the chiropractor, they actually were secretly owned and controlled by the unlicensed non-chiropractors;

(iii)   the professional corporations were phony chiropractic practices in that the alleged chiropractor-owner never even engaged in the practice of chiropractic through the professional corporations as an owner of the "practices;"

(iv)    the professional corporations served as vehicles through which fraudulent no-fault claims were submitted to GEICO and other New York automobile insurers for chiropractic services allegedly provided to individuals involved in automobile accidents in New York ("Insureds");

(v)     the non-chiropractors established "management," "billing," and/or "collection" agreements to create the facade of business relationships with the professional corporations, but actually used the "management," "billing," and/or "collection" agreements to unlawfully own and control the professional corporations, and then siphon off the resulting insurance payments to themselves, in contravention of New York law;

(vi)    the chiropractic services were provided – to the extent that they were provided at all – pursuant to illegal kickback arrangements among the Defendants and others; and

(vii)   in many cases, the purported chiropractic services were performed by independent contractors but were fraudulently billed to GEICO and other

14

insurers as if they were performed by the professional corporations' employees.

Additionally, (i) through records obtained in the GEICO v. Razzakova, et al., 11-CV-4237 (FMB)(SMG)("Razzakova action") litigation, GEICO confirmed that the PC Defendants in this action (Canon and Pugsley) issued regular payments to the billing company owned and controlled by Anikeyev (a company he admitted to controlling in an Affidavit submitted in the Zemlyansky Action). See Docket No. 1, Exhibit "6" and Declaration of Ryan Goldberg at Exhibit "3"; (ii) during its investigation of one of Pugsley's treatment locations, GEICO was advised to contact Pugsley at 718-676-7077, which is the phone number for the billing company owned and controlled by Anikeyev; (iii) the postage meter used by Pugsley is associated with this billing company and Anikeyev; and (iv) GEICO also interviewed multiple treating chiropractors who purportedly rendered services at Pugsley based on bills submitted to GEICO, and they essentially confirmed that Simakovsky was not the true owner and operator of Pugsley. For example, the treating chiropractors stated: (i) paychecks came from the "billing company" and not from the owner of Pugsley; (ii) they were unaware of where Pugsley was physically located; (iii) the "billing company" picks up the bills and reports from the location; and (iv) they had not seen Simakovsky at the treatment locations. See Docket No.1, passim.

Courts within the Second Circuit have routinely denied defendants' requests to vacate defaults, even where parties have presented statements and evidence well beyond what Anikeyev presented herein. See e.g. Travelers Indem. Co. v. Kabir, 368 Fed. App'x 209, 210 (2d Cir.2010) (affirming district court's denial of motion to vacate where defendant's testimony did not present credible evidence of a meritorious defense); United States v. Medley, 13 Fed. App'x 58, 59 (2d Cir. 2001) (noting defendants' conclusory allegations of fraud on the part of the school she attended did not excuse her nonpayment on a student loan, which was a debt owed to the

15

government, not to the school.); United States v. Riser, 2011 WL 1004566, at *3 (E.D.N.Y. 2011) (denying a motion to vacate a default judgment where "neither Defendant's affidavit nor his answer set forth the basis for his contention that he does not owe the amount listed in the judgment."); United Overseas Bank v. Marchand, 1996 WL 695902 *9 (S.D.N.Y. 1996) ("Although a defendant need not conclusively establish the validity of the defense asserted, it must, nonetheless, articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations.").

Anikeyev simply has failed to establish a defense with any degree of specificity beyond a general denial. That is insufficient to support vacatur of his default.

## IV.    GEICO Will Be Prejudiced if Anikeyev's Default is Vacated

Anikeyev's lack of any meritorious defense, standing alone, is sufficient to warrant denial of his motion. Nevertheless, GEICO faces considerable prejudice if Anikeyev's default is vacated. "To establish prejudice in the context of a default, there must be a showing that the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Right Solution Med. Supply, Inc., supra at * 10; Davis v. Musler, 713 F.2d 907 (2d Cir. 1983).

Here, Anikeyev's actions, or lack thereof, for over one year have created an environment in which much of the necessary discovery is likely to be wasted and spoiled. In a case of this magnitude, involving fraud, much of the critical evidence is in the hands of the defendants and related parties. It is now well over one year since the Complaint was filed, memories fade, information is forgotten and as a practical matter, GEICO would likely be unable to complete discovery with respect to Anikeyev. See World Magic International AVV 2010 WL 4457184, *2-3(denying motion to vacate default where twenty months have passed since filing of

16

complaint, no discovery was conducted and vacating the default judgment would result in more delay, fading of witness memories and loss of evidence); Badian 2004 WL 1933573 at *4-5 (S.D.N.Y. 2004)(finding prejudice where corporations ceased operating making discovery burdensome and memories could have faded).

GEICO's necessary discovery in this case would not rest solely on some set of financial documents as Anikeyev would have the Court believe.  While financial records are obviously of interest, GEICO's critical discovery in this case would include witness testimony, including testimony from individuals who worked at the various locations where the PC Defendants rendered services, from the patients themselves, and from non-parties who typically are revealed once GEICO obtains the financial and bank records of the PC Defendants and billing company.  Indeed, the financial and bank records are only the proverbial "tip of the iceberg" in these types of case since the siphoning of profits of the professional corporations is almost always concealed by fictitious contracts, lease arrangements, expense payments, while such monies are often diverted out of state.

For example, when GEICO sued Anikeyev in the Razzakova action, GEICO uncovered evidence that the PC Defendants in that case (controlled by Anikeyev) engaged in money-siphoning and dissipation activities, with those PC Defendants making regular and substantial payments to illegal escort services/brothels in Brooklyn, New York, and further regularly funneling thousands of dollars per month to, among other suspect entities, a series of Florida companies with ties to Anikeyev, his relatives and his billing company.   See Id., Docket No. 122, Goldberg Dec. at Exhibit "3".

Given the nature of the allegations in this case, the admitted past fraud by Anikeyev, the history of Anikeyev laundering and moving monies out-of-state, and the long passage of time engendered by Anikeyev's willful or at least egregious delay, GEICO respectfully submits that vacatur at this point would prejudice GEICO in obtaining discovery, proving its case, and

17

allowing Anikeyev the opportunity to have hid his assets and move monies to evade a judgment. See FedEX Techconnect, Inc. v. OTI, Inc., 2013 WL 5405699 at * 9 (S.D.N.Y. 2013)(finding vacating the judgment would prejudice plaintiff by providing defendant further opportunities to hide its assets or otherwise evade payment of its debts).

Furthermore, GEICO would be prejudiced by any vacatur of Anikeyev's default inasmuch as it has already settled its claims in this case against the codefendants, Simakovsky and the PC Defendants. See Docket Nos. 38 and 39. GEICO's Complaint includes RICO and common law fraud claims with Anikeyev and Simakovksy as part of the fraudulent scheme. GEICO's decision to compromise and settle its claims, in June 2015, rather than proceed to trial, was done in the context of Anikeyev being in default for almost one year in this case. If GEICO would have known that Anikeyev was going to actively litigate this case, it likely would have handled Simakovsky differently. Now, however, GEICO's rights in this case, by virtue of its settlement with Simakovsky, are definitively prejudiced as (i) it cannot now open the settlement and litigate against both Anikeyev and Simakovsky and (ii) Simakovsky, having settled, has no reason to preserve evidence, and even if he did, has no interest in participating in discovery. GEICO now only will be able to litigate its claims in a piecemeal fashion, without the "sham" or record owner of the PC Defendants being part of the litigation. See e.g. Kulwa v. Obiakor OB/GYN, PC, 2013 US Dist. LEXIS 17785 (E.D.N.Y. 2013) ("I find the risk of piecemeal resolution of this employment dispute to be evidence of prejudice that weighs against vacating entry of default."); Allstate Ins. Co. v. Bogoraz, 2012 US Dist. LEXIS 68110 at *15-16 (E.D.N.Y.2012) (prejudice to Allstate found where, among other things, "Allstate has reached settlements with several of the defendants and has moved for default judgment against others.").

Lastly, not to be overlooked is the fact that GEICO filed its motion for default judgment against Anikeyev (incurring the costs attendant to the motion) and that the Court has already

18

made a Report and Recommendation as to Anikeyev's default. <u>See</u> Docket Nos. 25-29, 40, 42. Anikeyev admits to being released to a halfway house on July 21, 2015 and was permitted to work under certain circumstances and spend weekends at home. Anikeyev Aff., ¶¶ 10-11. Yet, Anikeyev still did nothing to contact counsel or inquire about this case for more than one month even though *he knew the case had been pending against him for one year*.    Anikeyev only bothered to take action once GEICO served its motion for default judgment on or about August 21, 2015.

Anikeyev plainly waited until after GEICO incurred the cost and expenses of filing its default motion.  Under analogous circumstances, Courts have found prejudice. <u>See, e.g.</u> <u>Cohan</u>, <u>supra</u> at * 10, <u>aff'd</u> <u>Barry Cohan, D.D.S.</u>, <u>supra</u> ("Finally, if excused, Defendants' default would prejudice Plaintiff. Defendants should have filed an Answer or a motion to dismiss last August. It is now March. And Plaintiff has expended considerable attorneys' fees litigating its default judgment motions. When combined with the lengthy delay Defendants' default has caused, Plaintiff's needlessly expended attorneys' fees suffice to constitute prejudice.").

In any case, it is well settled that an absence of prejudice to the non-defaulting party does not in itself entitle the defaulting party to relief. <u>McNulty</u>, 137 F.3d. at 738; <u>See also</u> <u>Right Solution Med. Supply, Inc.</u>, <u>supra</u> at * 13; <u>Willis v. Landamerica Onestop, Inc.</u>, 2009 WL 2474624, at *3 (S.D.N.Y. 2009). Rather, the Court has discretion to deny a motion to vacate if it is persuaded that the default was willful and if the defaulting party does not have a meritorious defense. <u>McNulty</u>, 137 F.3d at 738.  Additionally, default judgment does not require a "strong showing" of prejudice, where the "evidence clearly shows willful default and the absence of a meritorious defense." <u>Gladys Music v. Ed Smith Prod., Ltd.</u>, 1994 WL 705265, at *2 (N.D.N.Y. 1994).

Here, GEICO has demonstrated actual prejudice.  But even if there was no prejudice, GEICO submits that Anikeyev's deliberate and egregious conduct, and lack of meritorious defense, is more than sufficient to deny Anikeyev's motion to vacate the default.  Indeed, GEICO submits that the entirety of Anikeyev's actions in this matter demonstrate that his efforts to vacate the default are nothing more than a tactical ploy to thwart or delay GEICO's right to execute on its expected judgment.

## CONCLUSION

For the reasons stated herein, Anikeyev's motion to vacate his default should be denied in its entirety.

Dated: Uniondale, New York
October 29, 2015

Respectfully submitted,

RIVKIN RADLER LLP

By: _____
      Michael A. Sirignano (MS 5263)
      Barry I. Levy (BL 2190)
      Ryan Goldberg (RG 7570)
926 RXR Plaza
Uniondale, NY 11556-0926
Tel.: (516) 357-3000
Fax: (516) 357-3333

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

3279867v3