UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY ET AL.

              Plaintiff,          **MEMORANDUM & ORDER**
                                    14-cv-3775 (KAM) (SMG)

  -against-

ANDREY ANIKEYEV

              Defendant.
-----------------------------------x
**MATSUMOTO, United States District Judge:**

        Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "plaintiffs") allege that Andrey Anikeyev ("Mr. Anikeyev" or "defendant") and other defendants engaged in a scheme to submit fraudulent claims for reimbursement under New York's "no-fault" insurance law. After Mr. Anikeyev was served with the summons and complaint on July 17, 2014 (ECF No. 11) and failed to answer or otherwise defend against the complaint, a certificate of default was entered against him on October 21, 2014. (ECF No. 24.) Plaintiffs subsequently filed and served defendants with a motion seeking entry of a default judgment on February 10, 2015. (ECF No. 28.) Plaintiffs settled with several defendants in July 2015, and then refiled and reserved their motions for entry of a default judgment against remaining defendants Mr. Anikeyev and Alexandler Sandler on August 18, 2015. (ECF No. 40-2.) Magistrate Judge Gold issued a report and

recommendation on September 6, 2015, recommending that this court grant the motion for default judgment against Mr. Anikeyev. (ECF No. 42.) The report and recommendation was served on the defendants on September 8, 2015. (ECF No. 43.) Mr. Anikeyev filed objections to the report and recommendation on September 16, 2015 (ECF No. 46.) The court adopted the report and recommendation on October 5, 2015, only as to defendant Mr. Sandler, in light of Mr. Anikeyev's objections and stated intentions to move to vacate the entry of default. (ECF No. 49.)

Mr. Anikeyev's instant motion seeking to vacate the certificate of default was brought nearly a year after the entry of default. For the reasons set forth below, Mr. Anikeyev's motion to vacate the certificate of default is DENIED. The court also adopts the aforementioned report and recommendation in its entirety and GRANTS plaintiffs' motion for a default judgment against Mr. Anikeyev.

## BACKGROUND

The court assumes basic familiarity with the facts in this action, which have been set out in prior opinions. (*See* ECF Nos. 42, 49.) On March 15, 2013, Mr. Anikeyev pled guilty in the U.S. District Court for the Southern District of New York to a superseding information charging one count of conspiracy to commit health care fraud and mail fraud. (*See* ECF No. 54, Ex. 2, Plea Hearing Transcript ("Plea Tr.") at 3, 15-16; ECF No. 54, Ex. 3,

Superseding Information.) At his plea hearing (there was no written plea agreement), Mr. Anikeyev allocuted that between 2008 and 2012 he "submitt[ed] bills through mail to various insurance companies for acupuncture services which I knew were false . . . . These bills requested payment for health care services for time periods in excess of the actual time period the patient spent with the acupuncturist." (*Id.* at 15-16.) Mr. Anikeyev was subsequently sentenced to 42 months in prison, and ordered to pay over $4 million in restitution. (ECF No. 55, Ex. 7, Criminal Judgment ("Judgment").)

On June 17, 2014, while Mr. Anikeyev was still incarcerated, GEICO filed a civil complaint in this action against Leonid Simakovsky, Pugsley Chiropractic P.L.L.C., Canon Chiropractic Care P.C., Mr. Anikeyev, Mr. Sandler, and five John Doe defendants. (ECF No. 1, Complaint ("Compl.").) Mr. Anikeyev acknowledges that he was served with the summons and complaint by prison authorities on July 17, 2014. (ECF No. 54, Affidavit of Andrey Anikeyev ("Anikeyev Aff.").) Plaintiffs asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as state law claims of common law fraud and unjust enrichment. (Compl. at ¶¶ 124-77.)

None of the defendants timely answered the complaint, though attorneys entered appearances for Mr. Simakovsky and the two chiropractic entities. (ECF Nos. 19-20.) Between July and

October 2014, GEICO sought, and obtained, entries of default against each named defendant. (ECF Nos. 12-17, 21-24.) The clerk entered a certificate of default against Mr. Anikeyev on October 21, 2014. (ECF No. 24.) On February 6, 2015, GEICO moved for a default judgment against all defendants, and submitted a memorandum as well as affidavits and declarations in support of the motion. GEICO served defendant Anikeyev at his last known address in New Jersey. (ECF Nos. 25-30.) GEICO's motion was referred to then-Chief Magistrate Judge Gold for a report and recommendation. On July 7, 2015, GEICO filed a voluntary stipulation of dismissal as to Mr. Simakovsky and the two chiropractic entities after reaching a settlement with those defendants. (ECF No. 39.) Mr. Anikeyev and Mr. Sandler, however, had still failed to appear or otherwise defend against this action. (ECF No. 42.) Accordingly, plaintiffs amended, and re-served and re-filed, their motion for default judgment to address only Mr. Anikeyev and Mr. Sandler. (ECF No. 40.)

On September 4, 2015, over a year after Mr. Anikeyev had been served with the complaint, his attorney moved for admission pro hac vice. (ECF No. 41.) Two days later, Magistrate Judge Gold issued his report and recommendation recommending that judgment be entered against Mr. Anikeyev and Mr. Sandler. (ECF No. 42.) On September 14, 2015, Mr. Anikeyev filed a motion seeking a pre-motion conference to vacate the certificate of default and the

court thereafter set up a briefing schedule to address the motion to vacate. (ECF No. 44; *see also* 9/21/15 docket entry.) Mr. Anikeyev also filed objections to the report and recommendation on September 16, 2015. (ECF No. 46.) On October 5, 2015, the court adopted Magistrate Judge Gold's report and recommendation as to Sandler, but deferred ruling on Mr. Anikeyev's objections to the report and recommendation and on plaintiffs' motion for default judgment with respect to Mr. Anikeyev pending a determination regarding Mr. Anikeyev's motion to vacate the certificate of default. (ECF No. 49.)

Mr. Anikeyev thereafter filed a memorandum in support of his motion to vacate the certificate of default, plaintiffs opposed the motion, and Mr. Anikeyev filed a reply. (ECF No. 54, Memorandum in Support of Motion to Vacate Clerk's Entry of Default ("Anikeyev Mem."); ECF No. 60, Memorandum in Opposition to Motion to Vacate Clerk's Entry of Default ("Pl. Opp'n."); ECF No. 55, Reply in Support of Motion to Vacate Clerk's Entry of Default ("Anikeyev Reply").) Mr. Anikeyev and his attorney, Raymond Zuppa, have both filed affidavits in support of Mr. Anikeyev's motion to vacate. (*See* Anikeyev Aff.; ECF No. 54, Affidavit of Raymond Zuppa ("Zuppa Aff.").)

## I. Motion to Vacate Certificate of Default

### A. Legal Standard

Where the clerk has entered a default but there is no default judgment, the standards set forth in Fed. R. Civ. P. 55(c) govern rather than Fed. R. Civ. P. 60(b), which provides the standard for setting aside a default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Rule 55(c) provides that a court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause has been shown, courts consider "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *Brown v. Baldwin Square LLC*, No. 14-CV-0551, 2015 WL 1014398, at *2 (E.D.N.Y. Mar. 9, 2015) (same).[1] Although there is a "strong preference for resolving disputes on the merits," the Second Circuit has explained that "a decision whether to set aside a default is a decision left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and

---

[1] The court notes that some of the cases cited in this opinion involve the application of Fed. R. Civ. P. 60(b). The standards are sufficiently similar, however, that courts often look to Rule 60(b) decisions in deciding Rule 55(c) cases and vice versa. *See Bricklayers & Allied Craftworkers v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 n.1 (2d Cir. 2015) (recognizing that some although "cases cited in this opinion address the standard for vacating a default judgment under Rule 60(b) of the Federal Rules of Civil Procedure rather than the standard for voiding an entry of default under Rule 55(c), there is no practical difference on this appeal"); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (relying on Rule 55(c) criteria in Rule 60(b) decision).

good faith of the parties." *McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (internal quotation marks and citations omitted).

B.  <u>Analysis</u>

The court turns next to the parties' disputes regarding application of the three relevant factors. Mr. Anikeyev argues that: (1) his incarceration and good faith belief that his attorney was handling this litigation show his default was not willful (Anikeyev Mem. at 11-17; Anikeyev Reply at 6-9); (2) he has a meritorious defense because he pleaded guilty to fraud involving acupuncture and not chiropractic entities, as alleged in this action (Anikeyev Mem. at 17-20; Anikeyev Reply at 9-13); and (3) plaintiffs will suffer no meaningful prejudice from the delay because their case is likely to be built on easily available and accessible documents (Anikeyev Mem. at 20; Anikeyev Reply at 13).

Plaintiffs respond that: (1) Mr. Anikeyev's default was willful and egregious because his imprisonment does not relieve him of the obligation to respond to a federal civil complaint (Pl. Opp'n at 7-11); (2) Mr. Anikeyev's proffered defense is composed of conclusory denials of allegations that fail to qualify as a meritorious defense (*id.* at 11-16); and (3) plaintiffs would suffer prejudice because evidence will be lost or has become stale, Mr. Anikeyev could have concealed assets, and plaintiffs would have handled the settlement with Mr. Anikeyev's co-defendants

differently had Mr. Anikeyev not been in default for nearly nine months by the time of the settlements (*id.* at 16-20).

*Willfulness*

In the context of an entry of a certificate of default, willfulness refers to "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal quotation marks and citation omitted) (finding willfulness where "defendants failed to file a responsive pleading for over nine months after the receipt of the summons and complaint" despite awareness that the legal action was pending); *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir. 1986) (upholding district court's refusal to vacate where motion to vacate entry of default was not made until seven months after default). Additionally, "where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998); *Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-CV-2376, 2011 WL 2847407, at *3 (E.D.N.Y. July 13, 2011) ("An attorney's conduct in defaulting is imputed to her clients."). Of the three criteria to be evaluated in the context of a default, "willfulness is preeminent, and a willful default will not normally be set

aside." *Pennacchio v. Powers*, No. 05-CV-985, 2010 WL 3767141, at
*3 (E.D.N.Y. Aug. 9, 2010) (internal quotation marks and citation
omitted) *report and recommendation adopted*, 2010 WL 3744052, at *3
(E.D.N.Y. Sept. 20, 2010); *Mun. Credit Union v. Queens Auto Mall,
Inc.*, No. 14-CV-4895, 2014 WL 6870960, at *1 (E.D.N.Y. Dec. 5,
2014) ("Usually, the factor that carries the most weight is whether
the default was willful." (citing *De Curtis v. Ferrandina*, 529 F.
App'x 85, 86 (2d Cir. 2013)).

Mr. Anikeyev admits that he was served with the summons
and complaint in this action while he was incarcerated on July 17,
2014. (Anikeyev Aff. at ¶ 3.) He claims that he contacted his wife
shortly thereafter — "probably the same day" — and told her to
"send the complaint to Raymond Zuppa." (*Id.* at ¶¶ 6-7.) Mr. Zuppa
represented Mr. Anikeyev in multiple other civil actions (Zuppa
Aff. at ¶ 4; Anikeyev Aff. at ¶ 7), and Mr. Zuppa characterizes
his relationship to Mr. Anikeyev as "akin to in-house counsel."
(Anikeyev Reply at 7.) Mr. Anikeyev also states that he had a
"strict limit of 300 minutes per month of phone usage" and, because
he had a large family with whom he wanted to stay in contact, he
had no opportunities to speak with Mr. Zuppa. (Anikeyev Aff. at
¶ 8.) Mr. Anikeyev does not explain why he could not have mailed
the summons and complaint to Mr. Zuppa himself. Nor does Mr.
Anikeyev state that he followed up with his wife or Mr. Zuppa after
he was served with the summons and complaint.

The clerk of court entered the certificate of default on October 21, 2014. (ECF No. 24.) Mr. Anikeyev was released to a halfway house on July 21, 2015. (Anikeyev Aff. at ¶ 10.) At the halfway house, he was permitted to spend weekends at home and use his cell phone while outside the halfway house. (*Id.* at ¶¶ 10-11.) On August 26, 2015, Mr. Anikeyev's wife contacted Mr. Anikeyev after she received a notice of GEICO's motion to enter default judgment in this action.[2] (*Id.* at ¶ 12.) Mr. Anikeyev then texted Mr. Zuppa to alert him about the default judgment. (*Id.*) Mr. Anikeyev spoke with Mr. Zuppa by phone "[a] few days later" inquiring about the specifics of this action. (*Id.* at ¶ 13.) The phone call was the first communication (besides the text message sent by Mr. Anikeyev) between Mr. Anikeyev and Mr. Zuppa regarding this action, and the first time they had communicated since before Mr. Anikeyev was incarcerated. (*Id.* at ¶¶ 9, 12-13; Zuppa Aff. at ¶ 18, 22.) After conducting a diligent search and inquiry, Mr. Zuppa avers that neither he nor anyone in his office ever received a copy of the summons or complaint and he had no idea he was representing Mr. Anikeyev in this action. He had not been requested to represent Mr. Anikeyev in this action, and had not received any

---

[2] Despite declarations of service on Mr. Anikeyev at his last known address signed by plaintiffs' counsel regarding service of documents on Mr. Anikeyev before the appearance of his counsel, Mr. Anikeyev fails to explain whether his wife received any other documents relating to this action besides the amended motion for default judgment served and filed on August 18, 2015. She has not filed an affidavit.

fees for any services. (Zuppa Aff. at ¶¶ 18-26.) On September 4, 2015, Mr. Zuppa moved for admission pro hac vice in this action. (ECF No. 41.)

As a preliminary matter, the Second Circuit has rejected the notion that an incarcerated defendant in a civil action can use his incarceration as an excuse to vacate a default. *See Doe v. Constant*, 354 F. App'x 543, 546 (2d Cir. 2009) (rejecting a plaintiff's argument that default judgment entered against him should have been vacated under Fed. R. Civ. P. 60(b)(6) because "he was incarcerated when the default judgment was entered"); *see also Goodrich v. WFS Fin., Inc.*, No. 06-CV-1435, 2008 U.S. Dist. LEXIS 32163 (N.D.N.Y Apr. 18, 2008) (in Rule 55(c) context, finding willful default where defendant, who claimed to be incarcerated at the time he admittedly received the complaint, waited over a year after filing of complaint to respond).[3] The court concludes that Mr. Anikeyev's incarceration does not preclude a finding of willfulness.

---

[3] *See also Jones v. Phipps*, 39 F.3d 158, 164 (7th Cir. 1994) ("Because [defendant] chose to ignore this lawsuit despite the ability to attend to its needs, she deserves to have her default judgment vacated only if every incarcerated litigant who receives adequate notice of an impending default judgment deserves to be excused from the obligations of litigation — a holding which would tear Rule 60(b) relief from its roots of 'extraordinary relief,' and one which we are simply unwilling to accept.").

Further, the circumstances of Mr. Anikeyev's incarceration, rather than suggesting his lack of fault, highlight the ease with which he could have arranged for the defense of this action. First, Mr. Anikeyev had 300 minutes per month to speak on the phone. Between the time the complaint was served in June 2014 and the time he was released to the halfway house in July 2015, Mr. Anikeyev therefore had approximately 65 hours of time to discuss this litigation on the phone. He never states that he communicated about this action during his incarceration to anyone but once with his wife, on the day he was served with the summons and complaint. To the extent that Mr. Anikeyev claims his default was not willful because his limited phone time precluded him from communicating with anyone beyond his immediate family, the court is therefore unpersuaded. Moreover, he offers no explanation as to why he could not have mailed or emailed his attorney a copy of the summons and complaint, and requested representation. Second, Mr. Anikeyev's argument that he lacked the time to communicate about this action is further weakened by the fact that while serving his prison term he could have communicated with his counsel. Even after he was released to the halfway house, and could spend weekends at home (and use his cellphone while outside the halfway house), he took no action to contact his attorney about the pending lawsuit.

Even if it was reasonable for Mr. Anikeyev to believe that Mr. Zuppa was defending him during his incarceration, he had

an independent obligation to monitor this litigation. *See McNulty*, 137 F.3d at 740 (imputing attorney's actions to his defendant-client where defendant made "no showing that he has made any attempt to monitor counsel's handling of the lawsuit"). Mr. Anikeyev's inaction after his purported conversation with his wife telling her to forward the complaint to Mr. Zuppa was "egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers*, 779 F.3d at 186. Between July 17, 2014, when he was served with the complaint, and August 26, 2015, when Mr. Anikeyev's wife contacted him about receiving notice of GEICO's second motion seeking a default judgment, Mr. Anikeyev never once avers that he had any discussion about this action with anyone. (Anikeyev Aff. at ¶ 12.) Mr. Anikeyev's behavior is completely unexplained, and is especially egregious given Mr. Anikeyev's experience with both the criminal and civil justice system. (*See* Compl. at ¶¶ 38-53 (describing the criminal charges against Mr. Anikeyev as well as multiple civil actions similar to the instant action in which Mr. Anikeyev was a named defendant); Anikeyev Aff. at ¶ 7 (stating that Mr. Anikeyev retained Mr. Zuppa for "two separate lawsuits" before his incarceration).) Mr. Anikeyev could not reasonably believe that over a year could pass in this action without any need for him to participate in the litigation of this action. The court therefore finds his default willful and egregious.

*Meritorious Defense*

"To show a meritorious defense, a defendant must present evidence that would constitute a complete defense if proven at trial." *Finkel*, 2011 WL 2847407, at *4. A defense is meritorious if "it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). A "defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky*, 249 F.3d at 173; *Bricklayers & Allied Craftworkers*, 779 F.3d at 187 ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen the default must support its general denials with some underlying facts." (internal quotation marks and citation omitted)).

Mr. Anikeyev spends nearly half of his briefing in support of his motion vigorously arguing that GEICO misrepresented, in the instant complaint, the nature of his guilty plea in the Southern District of New York. Mr. Anikeyev contends that his plea was only to a conspiracy to commit health care and mail fraud by submitting bills for acupuncture services, and had nothing to do with the fraud related to chiropractic services at issue in this action. He is correct about the acupuncture-specific character of his plea, though GIEOC has not misrepresented his plea or the nature of the charge. (*See* Plea Tr. at 15-16 (admitting that between 2008 and 2012 Mr. Anikeyev "submitt[ed] bills through

14

mail to various insurance companies for acupuncture services which [he] knew were false . . . . These bills requested payments for health care services for time periods in excess of the actual time period the patient spent with the acupuncturist.").)

Although GEICO broadly characterizes the plea at the outset of its complaint in this action (Compl. at ¶¶ 2, 38-46), GEICO clarifies that Mr. Anikeyev allocuted only to the acupuncture-related fraud. (*Id.* at ¶ 64 ("Despite not being a licensed medical professional, Anikeyev is no stranger to this type of manipulation of treatment protocols. For example, as admitted in his allocution, Anikeyev required various acupuncture professional corporations that he illegally controlled to submit fraudulent billing for services he knew were not rendered."); *see also id.* at ¶ 44 (discussing funds seized from Mr. Anikeyev's acupuncture corporations).) GEICO therefore did not misrepresent the allocution.[4]

Beyond nitpicking the plaintiffs' 46-page complaint and attacking plaintiffs' counsel, however, Mr. Anikeyev offers little in the way of a meritorious defense. Mr. Anikeyev's affidavit boils down to six primary contentions: (1) he has known Mr. Simakovsky,

---

[4] It does appear that GEICO incorrectly stated in its complaint that Mr. Anikeyev admitted he was not a "prevailing party" with respect to "other counts against him." (Compl. at ¶ 43.) The purported "prevailing party" admission does not appear in the documents cited in the complaint. The superseding information, however, only includes the one count to which Mr. Anikeyev pled guilty. (ECF No. 54, Ex. 3, Superseding Information.)

the purported "paper owner" of the chiropractic entities in this action, for 15 years; (2) Mr. Simakovsky shared office space with Mr. Anikeyev's wife's acupuncture facility; (3) Mr. Anikeyev permitted Mr. Simakovsky to use Mr. Anikeyev's P.O. box because Mr. Simakovsky was concerned that the billing company Mr. Simakovsky used for his chiropractic businesses was stealing from Mr. Simakovsky; (4) Mr. Anikeyev thereafter steered Mr. Simakovsky to Mr. Anikeyev's brother-in-law's billing company; (5) Mr. Anikeyev's only association with his brother-in-law's billing company was that he occasionally earned some money from the company for "client referrals and litigation support"; and (6) Mr. Anikeyev "did not handle any chiropractic billing for Lenny Simakovsky or any professional corporation owned by Simakovsky." (Anikeyev Aff. at ¶¶ 24-28.)

The court finds that the statements in Mr. Anikeyev's affidavit fall far short of indicating that he has a meritorious defense. First, some of Mr. Anikeyev's purported denials place him very close to the chiropractic scheme at the center of this action. (*See* Pl. Opp'n at 12-13 ("Anikeyev, in fact, associates himself with [Mr. Simakovsky], admits that he was the reason for the chiropractic PCs using a PO Box for billing and receipt of insurance checks, admits to sharing space with the billing company, . . . . and admits that he earned income from the billing company. Anikeyev then merely denies any further wrongdoing

16

without presenting any exculpatory facts or evidence.").) Second, the alleged scheme in this action resembles the scheme for which Mr. Anikeyev pled guilty. Both schemes involved Mr. Anikeyev's use of billing companies to falsely bill no-fault insurers for medical services.

Finally, the court finds that Mr. Anikeyev's denials are too conclusory to provide anything resembling a meritorious defense. In a very similar civil RICO case, an attorney was alleged to have been employed by fraudulently incorporated professional service entities in the collection of no-fault benefit payments from an insurer. *See Allstate Ins. Co. v. Bogoraz*, No. 10-CV-5286, 2012 WL 1655552, at *1 (E.D.N.Y. May 9, 2012). The attorney-defendant filed an affidavit seeking to vacate an entry of default. *Id*. at *1-2, *5. The attorney stated that he had no knowledge about the illegitimate corporate structure of the entities, that he believed legitimate medical services were provided by the entities, and that he did not engage in any of the alleged fee-splitting with the principal's co-defendant physicians. *See Allstate Insurance Co. v. Bogoraz et al.*, No. 10-CV-5286, ECF No. 110, Ex. B. The court considered the attorney's affidavit to be a "blanket denial . . . insufficient to demonstrate a meritorious defense." 2012 WL 1655552, at *5.

Like the defendant in *Bogoraz*, Mr. Anikeyev provides absolutely no evidence beyond approximately one page of blanket

17

denials in his affidavit to assert that he is not responsible for the alleged scheme detailed in the complaint. Both affidavits offered disavowals of illegal activity without providing any countervailing evidence. *See Brenton v. Consol. Rail Corp.*, No. 00-CV-0742E, 2003 WL 21383255, at *3 (W.D.N.Y. Feb. 4, 2003) ("[Defendant] has submitted cognizable defenses and crossclaims in its Answer – to wit, negligence of the plaintiff and other co-defendants –; however, it has submitted no evidence in support of such defenses. Such absence of evidence can only lead this Court to conclude that [defendant] has not shown a meritorious defense." (footnote omitted)).

Accordingly, the court concludes that Mr. Anikeyev has failed to establish a meritorious defense "good at law so as to give the factfinder some determination to make." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

*Prejudice*

With respect to the prejudice element, the court must consider "the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy . . . resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion." *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)

(internal quotation marks, citation, and alterations omitted); *see also Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (same).

GEICO argues that it is prejudiced because: (1) evidence has become stale; (2) Mr. Anikeyev, who has pled guilty to participating in a related fraudulent scheme, has a history of concealing assets; and (3) GEICO would have handled the settlement with Mr. Anikeyev's co-defendants differently had Mr. Anikeyev not been in default for a year by that time. (Pl. Opp'n at 16-20.) Mr. Anikeyev argues that there has been no prejudice to GEICO because GEICO's case is likely to rely on easily available and accessible documents. (Anikeyev Mem. at 20.)

The court finds that GEICO would suffer prejudice if the entry of default were vacated. First, the court agrees with GEICO that its decision to settle with Mr. Simakovsky and the chiropractic entities in this action is highly relevant to whether prejudice has been established. GEICO's settlement strategy may well have involved accepting a lesser settlement amount from Mr. Simakovsky and the chiropractic entities partially in reliance on the unchallenged entry of default it had obtained against Mr. Anikeyev and Mr. Sandler ten months prior. (ECF Nos. 24, 39.) The settlement may well have "thwart[ed] plaintiff[s'] recovery or remedy." *Swarna*, 622 F.3d at 142 (internal quotation marks and citation omitted). Second, the settlement rendered Mr. Simakovsky — the purported "paper owner" of the chiropractic entities —

19

without a reason to preserve evidence or participate in discovery in this action. Finally, Mr. Anikeyev is not in a position to tell GEICO how to prove its case, and his argument that GEICO could establish liability based on easily accessible documents is mere speculation. GEICO would almost certainly need to review patient records, billing records, and other documents of the corporation defendants, one of which has been dissolved (*see* Compl. at ¶ 12), and take depositions of, for example, individuals who worked at the chiropractic entities as well as patients. GEICO has shown that the default in this action has "creat[ed] increased difficulties of discovery." *Swarna*, 622 F.3d at 142 (internal quotation marks and citation omitted)

## II. Motion for Default Judgment

Although Mr. Anikeyev filed objections to Judge Gold's report and recommendation (which recommended granting the motion for default judgment against Mr. Anikeyev and Mr. Sandler (ECF No. 42)), his objections almost entirely focused on whether the entry of default should be vacated. (*See* ECF No. 46 ("The main point of contention is that the certificate of default should be vacated.").) However, the court will separately analyze the motion for default judgment.

### A. Legal Standard

In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error." *Zaretsky v. Maxi-Aids, Inc.*, No. 10-CV-3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012) (internal quotation marks omitted); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection"); *see also Soley v. Wasserman*, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011). The district court is "permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous." *Batista v. Walker*, No. 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) (citation and internal quotation marks and brackets omitted).

Furthermore, even on *de novo* review of specific objections, the court "will not consider 'arguments, case law, and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y.

Feb. 15, 2012) (quoting *Kennedy v. Adamo*, No. 02-CV-1776, 2006
WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)).

    B.   <u>Analysis</u>

       The court has addressed all of the arguments presented
in Mr. Anikeyev's objections throughout its analysis of Mr.
Anikeyev's motion seeking vacatur of the certificate of default,
and, for the same reasons discussed above, finds them to be without
merit. On de novo review of Judge Gold's well-crafted and reasoned
report and recommendation, the court adopts Judge Gold's report
and recommendation in its entirety with respect to Mr. Anikeyev.

<b>CONCLUSION</b>

       Accordingly, Mr. Anikeyev's motion to vacate the entry
of default is DENIED. The motion for entry of a default judgment
is therefore granted with respect to Mr. Anikeyev, and judgment
shall be entered against Mr. Anikeyev and Mr. Sandler, jointly and
severally, in the amount of $4,189,026.93, plus post-judgment
interest as prescribed by law. *See* 28 U.S.C. § 1961. The Clerk of
Court is directed to enter judgment and close this case.

**SO ORDERED.**

Dated:   March 31, 2015
        Brooklyn, New York

                          _____/s/_____
                          Kiyo A. Matsumoto
                          United States District Judge